UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| TROY MCCORMICK | CIVIL ACTION |
|---|---|
| VERSUS | No.: 16-1897 |
| THE NEW ORLEANS PUBLIC BELT RAILROAD COMMISSION | SECTION: "J"(4) |

## ORDER & REASONS

There are two motions for summary judgment before the Court. First is the New Orleans Public Belt Railroad Commission's ("Defendant") *Motion for Summary Judgment on Plaintiff's 2013 Injury* **(R. Doc. 16)**. Second is Defendant's *Motion for Summary Judgment on Plaintiff's 2014 Injury* **(R. Doc. 17)**. Plaintiff, Troy McCormick, filed oppositions (R. Docs. 20, 21) to Defendant's motions. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that the motions should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This is a railroad worker's personal injury action. Plaintiff alleges he suffered two separate injuries as a result of Defendant's negligence. He argues that Defendant failed to provide him with a reasonably safe place to work in violation of the Federal Employer's Liability Act, 45 U.S.C. § 51, *et seq.* ("FELA"), and further alleges that Defendant violated the Federal Safety Appliance Act, 49 U.S.C. § 20301, *et seq.* ("FSAA").

Plaintiff was employed by Defendant as a railroad switchman. His responsibilities generally included connecting and disconnecting ("coupling" or "uncoupling") railcars from each other. In March of 2013, Plaintiff was performing a railroad switch operation and alleges that he suffered injuries when a fence near his work area collapsed on him. Plaintiff alleges that when the fence collapsed it trapped his left hand against the railcar which proceeded to move forward. Although Plaintiff freed his hand, he alleges he suffered extensive injuries that required him to undergo surgery. Plaintiff asserts that this injury was a result of Defendant failing to provide him with a reasonably safe place to work in violation of the FELA.

Plaintiff also alleges that in June 2014 defective rail equipment caused injuries to his left shoulder and bicep. In short, Plaintiff alleges that one of Defendant's employees attempted to uncouple two railcars unsuccessfully, which caused Plaintiff to have to uncouple the cars from the other railcar. While Plaintiff successfully uncoupled the cars, Plaintiff alleges he injured his left shoulder and ruptured his left bicep and had to undergo surgery. Plaintiff asserts that these injuries were a result of Defendant violating a federal safety statute and failing to provide him with a safe place to work in violation of the FSAA and the FELA.

On March 4, 2016, Plaintiff filed suit against Defendant. On March 25, 2017, Defendant filed the present motions for summary judgment. Defendant argues that Plaintiff cannot prove that it was negligent or that its negligence caused Plaintiff's injuries. Further, Defendant argues that to the extent that Plaintiff asserts claims under the FSAA, Plaintiff did not plead a FSAA claim in his complaint, and that the alleged violation of the FSAA did not cause Plaintiff's injury. Plaintiff argues that both of his injuries were a direct result of Defendant's negligence, and that his complaint properly alleges a claim under the FSAA. Defendant's motions are now before the Court, without oral argument.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party

3

cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See *Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish

a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

**1.     The March 2013 Incident**

Plaintiff's claim for relief for the March 2013 incident arises exclusively under the FELA,[1] which imposes liability on railroads for injuries to their employees. *See Collins v. Union Pac. R. Co.*, No. 14-2129, 2015 WL 4478040, at *4 n.6 (E.D. La. July 22, 2015); *Romero v. CSX Transp., Inc.*, No. 06-1783, 2008 WL 5156677, at *3 (D. N.J. Dec. 9, 2008). "In order to prevail in an action under [the FELA,] the plaintiff must prove (1) that the defendant is a common carrier by railroad engaged in interstate commerce, (2) that he was employed by the defendant with duties advancing such commerce, (3) that his injuries were sustained while he was so employed, and (4) that his injuries resulted from the defendant's negligence." *Frank v. Kan. City S. Ry. Co.*, No. 7-1341, 2008 WL 2789052, at *2 (E.D. La. July 17, 2008) (citing *Weaver v. Mo. Pac. R.R. Co.*, 152 F.3d 427, 429 (5th Cir. 1998)). A railroad must provide its employees with a reasonably safe work

---

[1] 45 U.S.C. § 51 provides:
  Every common carrier by railroad while engaging in commerce between any of the several States or Territories . . . shall be liable in damages to any person suffering an injury while he is employed by such carrier in commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment. . . .

5

environment, and a railroad is considered negligent under the FELA if it knew, or should have known, that its conduct was inadequate to protect its employees. *Huffman v. Union Pac. R.R.*, 675 F.3d 412, 417 (5th Cir. 2012) (citing *Urie v. Thompson*, 337 U.S. 163, 178-79 (1949) (interior alterations in original)). Railroads are responsible for "injury or death resulting in whole or part from [their] negligence," *Collins*, 2015 WL 4478040, at *4, and the causal standard under the FELA is "very low" compared to the traditional negligence proximate cause standard, *Romero*, 2008 WL 5156677, at *3. The FELA "departs from common law negligence principles, making recovery easier to obtain than under a traditional negligence standard." *Id.* at *3 (citing *Sinkler v. Mo. Pac. R.R. Co.*, 356 U.S. 326 (1958)). Under the FELA, railroads are liable for an employee's injuries or death if the railroad "played *a part*—no matter how small—in bringing about the injury." *Huffman*, 675 F.3d at 417 (emphasis added) (citing *CSX Transp., Inc. v. McBride*, 564 U.S. 685 (2011)). And, under the FELA, an employee's contributory negligence will not bar his recovery, but may be considered to diminish recovery in proportion to his or her fault. *Romero*, 2008 WL 515667, at *3 (citing 45 U.S.C. § 53; *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 167 (2007)).

Plaintiff alleges that on March 18, 2013, he was injured while "picking up" a set of railcars. Plaintiff alleges that a privacy

fence in close proximity[2] to his work area suddenly collapsed on him while he was conducting a train movement. Plaintiff alleges that he raised his left hand to prevent the fence from hitting his face, but the fence pinned his hand against the moving railcar. Plaintiff asserts that he ran with the moving train car to free his hand, but sustained severe injuries to his left hand and thumb that required immediate surgical repair. Plaintiff alleges that the fence at issue was bent and damaged throughout his employment with Defendant, and that the fence could not be latched or locked because of its dilapidated condition.

Defendant argues that the fence at issue was in good condition prior to this incident, and that Plaintiff was injured when the wind caused the gate to blow open because it was not latched or locked. Defendant asserts that regardless of the condition of the fence, Plaintiff was responsible for inspecting the area, securing the gate so the fence would not blow open, and ensuring his surroundings were safe. Defendant also argues that Plaintiff was trained to inspect the area around him prior to performing his work, and that his claims that the fence was in poor condition and collapsed suddenly on him do not create genuine issues of fact for trial, because he was solely responsible for inspecting the area around him before performing his work. Defendant further contends

---

[2] The fence was approximately three to four feet from the railroad track.

that the fence could not have been damaged prior to this incident because neither Plaintiff nor any other employee reported that the fence was in poor condition. Thus, Defendant asserts that Plaintiff's injury was entirely unforeseeable. Finally, Defendant argues that Plaintiff's is barred from recovery due to his negligence.

Due to the liberal construction and interpretation of FELA claims, a plaintiff's FELA claim should only be dismissed on summary judgment "when there is a complete absence of probative facts supporting the plaintiff's position." *Howard v. Canadian Nat'l/Ill. Ctr. R.R.*, 233 F. App'x 356, 357-58 (5th Cir. 2007) (unpublished) (noting that "the test of sufficiency of the evidence in FELA cases is very much like the Alabama rule which provides that if there is a scintilla of evidence a jury question is presented."). "The ultimate fact question is whether the railroad exercised reasonable care in creating a reasonably safe working condition." *Rivera v. Union Pac. R.R. Co.*, 378 F.3d 502, 507 (5th Cir. 2004). There is not a complete absence of probative fact supporting Plaintiff's position in this case. While Defendant contends that the fence at issue was in good condition prior to the incident,[3] the foreman at the time of this incident, John McCrossen, Jr., testified that he is not aware of a single instance

---

[3] Defendant submitted the affidavit of TCI's Facility Manager, Earl Jones, who attests that the fence at issue was in "very good condition up until the gate was damaged" in the March 2013 incident. R. Doc. 16-4 at 1-2.

in which Defendant conducted an inspection at the site where Plaintiff was injured,[4] and Plaintiff testified in his deposition that the fence at issue was "broken"[5] from the time he began working for Defendant in 2012.[6] Thus, there is a genuine issue of fact as to whether the fence was in good or poor condition prior to the incident, which in turn may determine whether Defendant exercised reasonable care in creating a reasonably safe working environment. *See id.* Defendant further argues that Plaintiff was responsible for ensuring that his work space was safe, and that Plaintiff must not have ensured that his area was clear prior to conducting the stretch.[7] However, Plaintiff suggests that his area was secure and hazard-free prior to telling the foreman or conductor to stretch the railcars,[8] but after the stretch began, the fence collapsed on him.[9] Thus, there is also a factual issue as to whether Plaintiff ensured that his area was clear prior to performing his duties.

Defendant also contends that the cause of the accident was Plaintiff's failure to latch or lock the fence. Defendant submitted the accident report from the March 2013 incident, which described

---

[4] R. Doc. 16-6 at 7.
[5] R. Doc. 16-3 at 18.
[6] *Id.* at 26; R. Doc. 20-2 at 8.
[7] *See* R. Doc. 16-3 at 37-38. Plaintiff agrees that it is his job to observe his surrounding and to ensure that he can perform his duties safely.
[8] *See id.* at 38. To ensure that train cars are or are not secured to one another, Defendant's railroad employees engage in a "stretching" maneuver. Essentially, the switchman attempts to connect or disconnect the train cars and then tells the conductor or the foreman to "stretch" the cars. If the cars are connected, then the stretch will move all of the connected railcars. If the cars are properly, or improperly, disconnected, then only some of the railcars will move.
[9] *Id.* at 35-37.

9

the injury as occurring in the following manner: "While trying to shore gate out of the way—left hand got caught between the gate and moving rail."[10] The accident report lists the "cause of the accident" as "gate not latched/locked."[11] However, the person who created the accident report, John McCrossen, Sr., does not recall how he determined that this was the cause of the accident, never spoke with Plaintiff about what happened prior to creating the accident report, does not recall whether he took any witness statements prior to creating the accident report, did not know the condition of the fence prior to creating the accident report, and Plaintiff did not sign the accident report to presumably acknowledge that this was what in fact occurred.[12] Additionally, Plaintiff testified that he could not latch or lock the fence because it was dilapidated,[13] and that the fence could not move because of its condition.[14] Again, the jury will determine whether the fence was in good or poor condition prior to this incident and whether the fence could have, or should have, been latched or locked.

Ultimately, there are genuine issues of material fact surrounding Plaintiff's 2013 injury. If the jury believes Plaintiff's version of events and determines that the fence was in

---

[10] R. Doc. 16-5.
[11] *Id.*
[12] R. Doc. 20-4 at 4-6.
[13] R. Doc. 16-3 at 22.
[14] *Id.* at 24.

disrepair, it may also find that a prior inspection of the fence would have revealed its allegedly defective condition. If so, the jury may also determine that Defendant was negligent in failing to provide Plaintiff with a reasonably safe place to work. *See Montgomery v. CSX Transp., Inc.*, No. 14-1520, 2017 WL 219369, at *6 (D. Md. Jan. 19, 2017) (citing *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330 (4th Cir. 1998) ("FELA imposes on a railroad carrier a duty to take reasonable precautions to inspect the workplace and protect its employees from possible danger. . . . A FELA Plaintiff must provide evidence to show *that an earlier inspection would have revealed or cured the problem* [], or that that the railroad had notice of the defect prior to the accident.") (emphasis added)). Defendant's defense may be that it was never informed of the poor condition of the fence or that the fence should have been latched or locked. But the cause of Plaintiff's March 2013 injury, and any comparative fault that may be attributed to him, are questions of fact that must be resolved by the jury. *See McBride*, 564 U.S. at 703 ("Reasonable foreseeability of harm . . . is an essential ingredient of FELA negligence. *The jury*, therefore, must be asked, initially: Did the carrier fail to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances?" ) (emphasis added); *see also Huffman*, 675 F.3d at 418 ("If an injury has multiple causes, it is sufficient if the railroad's "negligence played a part—no

matter how small—in bringing about the injury."); *Frank*, 2008 WL 2789052, at *3-4 (noting that summary judgment in favor of the defendant was unwarranted under the FELA even if the overall weight of the evidence presented favored the defendant's version of events).

## 2. The 2014 Incident

In 2014, Plaintiff allegedly injured his bicep and shoulder while attempting to uncouple two railcars. Plaintiff alleges that Defendant is liable for these injuries because it violated the FSAA and failed to provide him with a reasonably safe place to work under the FELA. "In FELA actions based on a railroad's safety violations . . . the statutory scheme and jurisprudence interpreting it strike an even more employee-favorable balance in terms of adjusting responsibility for the loss." *Romero*, 2008 WL 5156677, at *3. While the FELA generally requires a plaintiff to prove the common law elements of negligence, this "requirement is eliminated where the claim involves an equipment defect or malfunction in violation of the FSAA." *Id.* (citing *Affolder v. New York, C. & St. L.R. Co.*, 339 U.S. 96, 97 (1950)). Further, "a plaintiff's damages may not be diminished to reflect any contributory negligence by the plaintiff." *Id.* (citing *Eckert v. Aliquippa & S. R.R. Co.*, 828 F.2d 183, 186 (3d Cir. 1987)).

Plaintiff's argument may be summarized as follows: At the time of the incident, Plaintiff was working for Defendant and was

assigned to uncouple railcars. Plaintiff and Clarence "Sonny" Boudloche were attempting to uncouple two railcars. To uncouple railcars, an employee must pull a "cut lever." Both of the connected railcars have a cut lever, so the employee may pull either railcar's cut lever to disconnect the railcars from one another. Boudloche unsuccessfully attempted to pull the cut lever several times on one of the railcars. Plaintiff alleges that the "knuckle pin," which is a part of the "coupler," which connects the two railcars, was not working properly. After Boudloche was unsuccessful in uncoupling the railcars, Plaintiff went to the other connected railcar and pulled the cut lever. When Plaintiff pulled this cut lever he successfully uncoupled the railcars, but he ruptured his bicep and injured his shoulder in the process. Plaintiff alleges that because the first cut lever did not function properly and he was forced to go around the railcars to pull the other cut lever, which then resulted in his injuries, Defendant violated the FSAA and is *per se* negligent and liable for his injuries.

Defendant first argues that Plaintiff's complaint does not plead a cause of action under the FSAA, and second, Defendant contends that Plaintiff did not injure his bicep or shoulder on the allegedly defective equipment, but rather injured himself while pulling a different "cut lever" which operated normally. Plaintiff's complaint provides that Defendant "violated *railroad*

13

*safety regulations* enacted for the safety of its employees, which renders [Defendant] *strictly liable* under the provisions of FELA and U.S. Supreme Court precedent."[15] Plaintiff could have been clearer in alleging a strict-liability claim under the FSAA, but the Court finds that the claim is sufficiently alleged. *See Richardson v. BNSF Ry. Co.*, No. 13-5415, 2014 WL 347047, at *2-3 (E.D. La. Jan. 28, 2014) (holding that "a FELA employer's violation of a statutory or regulatory duty gives rise to FELA liability for a resulting employee injury."); *see also Magelky v. BNSF Ry. Co.*, 579 F. Supp. 2d 1299, 1304-05 (D. N.D. 2008 ) ("The [FSAA] does not create a private cause of action, but employees who allege that they have been injured as a result of a safety violation may sue under FELA."). Accordingly, the Court will next address whether Defendant violated the FSAA and should be held negligent *per se* under FELA.

"To recover for a violation of the [FSAA], a plaintiff must show: (1) the statute was violated; and (2) the violation was 'a causative factor contributing in whole or in part to the accident' that caused her injuries." *McGowan v. Wis. Cent. Ltd.*, No. 04-0170, 2005 WL 2077355, at *3 (E.D. Wis. Aug. 26, 2005) (citing *Richards v. Consol. Rail Corp.*, 330 F.3d 428, 432 (6th Cir. 2003); *Grogg v. Mo. Pac. R.R. Co.*, 841 F.2d 210, 212 (8th Cir. 1988));

---

[15] R. Doc. 1 at 5 (emphasis added).

*see also Coray v. S. Pac. Co.*, 335 U.S. 520, 523 (1949) ("In this case where undisputed evidence established that the train suddenly stopped because of defective air-brake appliances, petitioner was entitled to recover if this defective equipment was the sole or contributory proximate cause of the decedent employee's death."). Plaintiff alleges that Defendant violated 49 U.S.C. § 20302(a)(1)(A)[16] because the coupler did not release without Plaintiff having to go around the railcars to pull the other railcar's cut lever to uncouple the railcars. "A plaintiff can establish the railroad's liability for an accident involving a coupling mechanism by either (1) providing evidence that the two cars failed to couple automatically upon impact or (2) showing a defect in the coupling equipment." *Loy v. Norfolk S. Ry. Co.*, 112 F. Supp. 3d 795, 803 (N.D. Ind. 2015) (citing *DeBiasio v. Ill. Cent. R.R.*, 52 F.3d 678, 683 (7th Cir. 1995)). However, a "plaintiff need not identify a specific defect" but must only identify a specific piece of equipment covered by the FSAA which he alleges is defective. *Id.* (citing *Myers v. Reading Co.*, 331 U.S. 477, 483 (1947)). Here, Plaintiff alleges that the cut lever and the coupler were defective because the railcars did not

---

[16] R. Doc. 21 at 2. Plaintiff's memorandum incorrectly cites the provision of the FSAA which he argues Defendant violated. Plaintiff cites to 49 U.S.C. § 20302(a)(1)(B), but his memorandum in fact provides the text of 49 U.S.C. § 20302(a)(1)(A). 49 U.S.C. § 20302(a)(1)(B) appears to be inapplicable to Plaintiff's 2014 incident because it did not involve "sill steps and efficient hand brakes."

uncouple after several attempts and Plaintiff was forced to go around[17] the railcars to uncouple them. Accordingly, there is at least a genuine issue of fact as to whether the coupler or cut lever was defective, which, if proven, is a violation of 49 U.S.C. § 20302(a)(1)(A). *See Mahl*, 406 F.2d at 1203-04 ("The failure of a coupler to uncouple due to a defect therein is sufficient to establish liability under the [FSAA], regardless of whether it was necessary for the employee to go between the ends of the cars. . . . If the switchman operates the coupler with due care in the normal manner, *the jury can decide* that the coupler is defective in violation of the Act by virtue of its failure to release after several attempts." (emphasis added)); *see also DeBiaso*, 52 F.3d at 684 (finding that the plaintiff produced sufficient evidence of a 49 U.S.C. § 20302(a)(1)(A) violation where the Plaintiff testified that the coupler did not function properly and had to be manually lifted to uncouple the railcars); *see also Hoemmelmeyer v. CSX Transp., Inc.*, No. 4-166, 2005 WL 2124259, at *5 (S.D. Ohio Aug. 30, 2005) (denying defendant's motion for summary judgment because

---

[17] It is immaterial that Plaintiff did not actually go *between* the two cars but instead went *around* them. See *Davis v. Wolfe*, 263 U.S. 239, 242-43 (1923) (quoting *Louisville R.R. v. Layton*, 243 U.S. 617, 621 (1917) (noting that the FSAA makes "clear that the liability in damages to employees for failure to comply with the law springs from it being made unlawful to use cars not equipped as required—not from the position the employee may be in or the work which he may be doing at the moment when he is injured. . . . [C]arriers are liable to employees in damages whenever the failure to obey these safety appliance laws is the proximate cause of injury to them when engaged in the discharge of duty."); *see also*, *Mahl*, 406 F.2d at 1203 (noting that it was "not necessary for the Plaintiff to show that he had to go between the cars in order to uncouple them" in order to show a violation of the FSAA).

it found factual issues as to what sort of inspection the defendant conducted, whether such inspection included the cut-lever that allegedly injured the plaintiff, and the extent of the plaintiff's injuries).

Finally, Defendant argues that Plaintiff cannot prove that the allegedly defective coupler or cut lever caused his injuries because Plaintiff was only injured after the cut lever and coupler successfully uncoupled the railcars. However, the issue of causation and whether Plaintiff's injuries resulted "in whole or in part" from Defendant's violation of the FSAA is an issue of fact left for the jury. The Supreme Court has made clear that "if *the jury* determines that the defendant's breach" played *a part* in producing Plaintiff's injury, it may find in Plaintiff's favor. *Carter*, 338 U.S. at 435 (emphasis added). Accordingly, while Defendant argues that Plaintiff was not injured due to the allegedly defective coupler and cut lever, whether these devices were defective and caused Plaintiff's injury are issues of fact that must be resolved by the jury. Therefore, summary judgment is inappropriate on Plaintiff's FSAA and FELA claims for the 2014 injury, because if the jury determines that Defendant violated the FSAA then Defendant also violated the FELA. *See Ill. Cent. Gulf R.R. Co. v. Int'l Paper Co.*, 824 F.2d 403, 405 (5th Cir. 1987) ("A railroad is strictly liable under the FELA for injury caused by a

violation of the SAA.") (citing *Crane v. Cedar Rapids & Iowa City Ry. Co.*, 395 U.S. 164, 166 (1969)).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the New Orleans Public Belt Railroad Commission's *Motions for Summary Judgment* **(R. Docs. 16, 17)** are **DENIED**.

New Orleans, Louisiana this 24th day of May, 2017.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE